UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD ADAMS,<br>    Plaintiff<br><br>v.<br><br>IRONHORSE AUTO, LLC d/b/a<br>CENTRAL HYUNDAI and<br>HYUNDAI CAPITAL AMERICA, INC.<br>d/b/a HYUNDAI FINANCE,<br>    Defendants | CIVIL ACTION NO.<br><br><br><br>JURY TRIAL DEMAND<br><br><br><br><br>MAY 30, 2018 |

## COMPLAINT

### I. INTRODUCTION

1. This is an action brought by a consumer under the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667 *et seq.* Plaintiff also asserts pendent state law claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, for forgery pursuant to Conn. Gen. Stat. § 52-565, and for fraud. Hyundai Capital America, Inc. d/b/a Hyundai Finance ("Hyundai Finance") is named as a defendant as the assignee of the lease agreements.

### II. PARTIES

2. Plaintiff, Ronald Adams, is a natural person residing in Merritt Island, Florida.

3. Ironhorse Auto, LLC d/b/a Central Hyundai ("Central Hyundai") is a Connecticut limited liability company located in Plainfield, Connecticut, and it is a licensed dealer of new and used motor vehicles.

4. Hyundai Finance is a California corporation with its headquarters in Irvine, California, that accepts assignment of retail installment contracts and leases from car dealerships such as Central Hyundai.

## III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 28 U.S.C. §§ 1331 and 1332.

6. This Court has jurisdiction over the defendants because they regularly conduct business in this state and because Central Hyundai is located in this state.

7. Venue in this Court is proper, because Central Hyundai is located in this state and the transaction alleged herein occurred in this state.

## IV. FACTUAL ALLEGATIONS

8. On or about May 17, 2017, Plaintiff leased a 2017 Hyundai Sonata (the "Sonata") from Central Hyundai pursuant to a Motor Vehicle Lease Agreement (the "First Lease") that was assigned to Hyundai Finance.

9. The First Lease reflected an initial cash payment of $1,864.43, even though only $890 was paid, and it provided for monthly payments of $449.99.

10. Plaintiff, who is an elderly man, was having difficulty getting into and out of the Sonata, and he called Central Hyundai the next day and spoke with Fernando, a sales manager, and explained the problems he was having with the Sonata. Fernando told Plaintiff that Central Hyundai would try to work something out and would call him back.

11. When Fernando did not call Plaintiff back, Plaintiff went to Central Hyundai, on more than one occasion, and he spoke with Fernando and another sales manager named Vincent.

12. Plaintiff also called Hyundai Finance and the Hyundai customer service line and was told the dealership might be able to help him reverse the lease.

13. In July, 2017, Vincent of Central Hyundai called Plaintiff and told him that he could exchange the Sonata for a 2017 Hyundai Tucson (the "Tucson").

14. Vincent told Plaintiff that he had been personally using the Tucson as a demonstrator.

15. On information and belief, this was a false and deceptive statement.

16. Vincent did not tell Plaintiff that he needed any additional money down, and Plaintiff believed he was exchanging the Sonata, which was slightly used, for a different slightly used vehicle without the need to pay additional money.

17. On or about July 11, 2017 Plaintiff, returned to Central Hyundai with his wife, Maureen Adams, to exchange the Sonata for the Tucson.

18. Plaintiff and his wife were kept at the dealership for approximately 7 or 8 hours.

19. Central Hyundai told Plaintiff during the course of the day that he needed to pay an additional $2,595 in order to make the exchange, and Plaintiff agreed to charge that amount on his American Express credit card.

20. Unbeknownst to Plaintiff, Central Hyundai prepared a new Lease Agreement (the "Second Lease") for the Tucson.

21. The Second Lease lists the Sonata as a trade-in and provides for monthly lease payments of $596.28, which was in excess of $146 more per month than the payment under the First Lease.

22. The Second Lease also differed from the First Lease in that it had a term of 48 months as opposed to the 36 month term in the Second Lease.

23. As a consequence of the increased monthly payment and the increased lease term, the total monthly payments under the Second Lease ($28,621.44) exceeded the total monthly payments under the First Lease ($16,199.64) by $12,421.80.

24. Neither Vincent nor any other representative of Central Hyundai informed Plaintiff that the monthly payments would increase in amount and duration, and Plaintiff did not know that the cost of exchanging the Sonata for the Tucson was greater than the $2,595 that he had been asked to advance.

25. Plaintiff was not shown or presented with the Second Lease.

26. Instead, while Plaintiff was distracted while speaking with an acquaintance who was employed by Central Hyundai, Vincent presented the Second Lease to his wife, Maureen Adams, and told her to sign her husband's name.

27. Maureen Adams signed Plaintiff's name to the Second Lease without realizing that it differed materially from the First Lease or that her husband was unaware that a Second Lease had been prepared.

28. Vincent put a copy of the Second Lease in an envelope and gave it to Maureen Adams.

29. Plaintiff took delivery of the Tucson without realizing that Maureen Adams had signed another lease, and he believed that he was going to make the same payments to Hyundai Finance pursuant to the First Lease.

30. The following morning, Plaintiff discovered that Maureen had signed the Second Lease and learned the substantial increased cost associated with the exchange.

31. Plaintiff immediately called Central Hyundai and spoke with Vincent, who responded only that he "did not know" what had happened.

32. On information and belief, there was an issue or problem with the Second Lease that precluded Central Hyundai from assigning it to Hyundai Finance as intended.

33. Someone at Central Hyundai prepared a new lease (the "Third Lease") and forged Plaintiff's name to that lease.

34. The date and terms contained in the Third Lease differed from the Second Lease.

35. Specifically, in addition to the different signature for Plaintiff, the Third Lease had different amounts disclosed for the gross capitalized cost, capitalized cost reduction, adjusted capitalized cost, residual value, and depreciation.

36. Central Hyundai subsequently assigned the Third Lease to Hyundai Finance and falsely represented that it was genuine and had been executed by Plaintiff.

37. Plaintiff called Hyundai Finance and told them that he did not want the Tucson, and Hyundai Finance told Plaintiff he could take the Tucson back to any Hyundai dealership.

38. On or about November 1, 2017, Plaintiff turned the Tucson to MJ Sullivan Chevrolet Buick Pontiac.

39. On or about January 10, 2018, Hyundai Finance notified Plaintiff that he owed $12,935.59 in early termination fees for the Tucson.

40. Hyundai Finance has negatively reported the account on Plaintiff's credit reports.

41. In or about February, 2018, at Plaintiff's request for a copy of his lease, and Hyundai Finance sent Plaintiff a copy of the Third Lease, which Plaintiff eventually discovered differed from the Second Lease.

42. Hyundai Finance is subject to Plaintiff's claims and defenses against Central Hyundai pursuant to Conn. Gen. Stat. § 42-411(b).

## V. CAUSES OF ACTION

### A. CONSUMER LEASING ACT (First Lease)
(Central Hyundai only)

43. Central Hyundai violated the CLA in connection with the First Lease by falsely disclosing an initial cash payment of $1,864.43 when only $890 was paid.

44. For Central Hyundai's violations of the CLA, Plaintiff is entitled to damages, plus statutory damages of $2,000, and attorney's fees and costs.

### B. CONSUMER LEASING ACT (Second Lease)
(Central Hyundai only)

45. Central Hyundai violated the CLA in connection with the Second Lease by failing to provide Plaintiff with any of the disclosures required by the CLA prior to consummation of the transaction.

46. Central Hyundai further violated the CLA in that the written disclosures provided in the Second Lease differed from the actual terms of the lease agreement and were not accurate.

6

47. For Central Hyundai's violations of the CLA, Plaintiff is entitled to damages plus statutory damages of $2,000, and attorney's fees and costs.

### C. CONNECTICUT UNFAIR TRADE PRACTICES ACT

48. Central Hyundai's conduct as aforedescribed was unfair and deceptive and in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages in that he lost use of the vehicle, he incurred negative reporting on his credit reports relating to the forged lease account, and he temporarily lost use of the money he paid for the initial cash payment towards the Tucson until he was able to reverse the charge pursuant to a payment dispute with American Express.

49. Plaintiff is entitled to actual damages, attorney's fees and costs, and, in the discretion of the court, punitive damages.

### D. VIOLATION OF CONN. GEN. STAT. § 17b-462

50. Plaintiff is over 80 years of age and defined as "elderly" pursuant to Conn. Gen. Stat. § 17b-450.

51. Central Hyundai exploited Plaintiff as that term is defined by Conn. Gen. Stat. § 17b-450 by taking advantage of an elderly person for monetary gain in violation of Conn. Gen. Stat. § 17b-462(a) by way of the aforedescribed conduct.

52. Defendants are liable to Plaintiff for damages and a reasonable attorney's fee.

### E. CIVIL FORGERY
(Central Hyundai only)

53. Central Hyundai committed civil forgery when it assigned the Third Lease to Hyundai Finance and falsely represented that the Plaintiff's signature on that lease was genuine.

54. Central Hyundai is liable to Plaintiff for double his damages pursuant to Conn. Gen. Stat. § 52-565.

### F. DECLARATORY RELIEF

55. Plaintiff seeks an order that he is not liable to Hyundai Finance under the Third Lease.

56. Plaintiff also seeks an order compelling Hyundai Finance to request the deletion of any reporting by all consumer reporting agencies to whom it has reported the account on the forged lease agreement.

Wherefore, Plaintiff claims actual damages, punitive damages, CLA statutory damages of $2,000 for the First Lease, CLA statutory damages of $2,000 for the Second and Third Lease, double damages pursuant to Conn. Gen. Stat. § 52-565, attorney's fees and costs; and he seeks an order that he is not liable to Hyundai Finance under the terms of the forged lease and an order that Hyundai Finance request the deletion of credit reporting.  **Plaintiff demands a trial by jury.**

PLAINTIFF, RONALD ADAMS

By: _____
Daniel S. Blinn (ct02188)
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax (860) 571-7457